IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

PACIFIC MARINE & SUPPLY          )     CIVIL NO. 08-00022 HG-BMK
COMPANY, LTD.,                   )
                                 )
            Plaintiff,           )
                                 )
        vs.                      )
                                 )
LOCKHEED MARTIN CORPORATION, a   )
Maryland corporation             )
                                 )
            Defendant.           )
                                 )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF PACIFIC
MARINE & SUPPLY COMPANY, LTD.'S MOTION FOR SUMMARY JUDGMENT
AND
DENYING DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Pacific Marine & Supply Company, Ltd. ("Plaintiff"
or "Pacific Marine") and Defendant Lockheed Martin Corporation
("Defendant" or "Lockheed") entered into a license agreement
concerning the use of certain technology for small water plane
area twin hull ships.  Central to the parties' dispute is whether
the license agreement remains in effect or was terminated by the
parties' subsequent settlement agreement.

The parties have filed cross-motions for summary judgment
along with separate concise statements of fact in support.
(Docs. 15, 16, 17, 18.)

For the reasons set forth below, the Plaintiff's Motion for
Summary Judgment is GRANTED IN PART AND DENIED IN PART and

1

Defendant's Motion for Summary Judgment is DENIED.  The Court finds that the settlement agreement did not include, make reference to, or terminate the license agreement, but that genuine issues of material fact remain as to whether the parties' mutually abandoned the license agreement and/or whether Pacific Marine's alleged prior material breach excused Lockheed's performance under the license agreement.

<u>**BACKGROUND**</u>

A.   <u>**The Parties' Agreements**</u>

1.   *License Agreement*

On May 6, 1993, the parties entered into a License Agreement under which Lockheed granted Pacific Marine a license under certain patents owned by Lockheed, "to make, have made, have used, sell, and have sold SLICE Ships and parts thereof for commercial applications."  (Pacific Marine's Concise Statement of Facts ("Pacific CSF", Doc. 18) at Exh. 1 at Exh. A (hereinafter, "License Agreement").)  The License Agreement defines "SLICE Ships" as "small water plane area twin hull ships which are covered by a claim of at least one of the [Lockheed] Patents, or which are defined by or manufactured using significant portions of the data transferred under this Agreement . . . " (License Agreement at ¶ 2.2.)

Section 6.2 of the License Agreement allowed Lockheed to terminate the Agreement, after providing sixty days written

2

notice and an opportunity to cure, in the event Pacific Marine failed to market SLICE Ships and make them available to trade at reasonable prices.

The parties amended the License Agreement in January 1997 and again in November 1998.  A provision in the Second Amendment, as discussed below, is the subject of this lawsuit.  (Pacific CSF at Exh. A at Exh. 1 "License Amendment" and Exh. 2 "Second Amendment of License Agreement".

**2.**   ***Purchase Agreement***

In September 1994, the parties entered into a Purchase Agreement under which Pacific Marine had the option to purchase a prototype SLICE vessel for $760,620.00.  (Pacific CSF at Exh. 2, hereinafter "Purchase Agreement".)

**3.**   ***Purchase and Sale Agreement***

In December 1998, the parties entered into a Purchase and Sale Agreement under which Pacific Marine agreed to purchase the SLICE vessel, "Official Number 1048894, a vessel documented under the laws of the United States of America . . . ", from Lockheed. (Pacific CSF at Exh. 3, hereinafter "Purchase and Sale Agreement".)  The Purchase and Sale Agreement addressed the relationship between the agreement to purchase the vessel and the License Agreement:

> 6.   <u>Applicability of License Agreement</u>.   It is specifically agreed that Pacific Marine has satisfied all royalty payment obligations for SLICE, Official Number 1048894, under the

3

> provisions of LMSC/Pacific Marine SLICE Technology
> Licensing Agreement dated May 6, 1993, as amended
> on or about November 5, 1998, with respect to the
> payment of royalties related to this vessel.

(Purchase and Sale Agreement at ¶ 6.)

As discussed below, Pacific Marine never completed the purchase of the SLICE vessel, but instead, the parties entered into a settlement agreement.

### 4.   *February 2000 Letter*

Pacific Marine's president sent Lockheed's Vice President a letter, dated February 2, 2000, which, among other things, confirmed cancellation of Pacific's purchase of the SLICE Vessel. (Pacific CSF at Exh. 3 at Exh. 4 ("February 2000 Letter".)

### 5.   *Settlement Agreement*

The parties entered into a Settlement Agreement, entitled "Settlement Agreement SLICE Vessel Title".  The Settlement Agreement, dated July 11, 2000, refers to "certain arrangements between the parties arising out of a Purchase Agreement dated September 28, 1994 (the "Purchase Agreement"), (2) a Purchase and Sale Agreement dated December 14, 1998, and (3) a letter dated February 2, 2000 from [Pacific Marine] to [Lockheed], all of which relate to the SLICE Vessel, Official No. 1048894 . . . " (Pacific CSF at Exh. 3 at Exh. 1 ("Settlement Agreement").  The Agreement transferred the SLICE vessel that was the subject of the Purchase Agreement to Lockheed.  The Agreement contains mutual releases and an entire agreement clause.  (Settlement

4

Agreement at ¶¶ 4-6 .)  The mutual releases release all claims "relating to the SLICE vessel, the Purchase Agreement, the 1998 Purchase and Sale Agreement, the February 2, 2000 letter, or any other document or understanding relating to the SLICE vessel from the beginning of time to the date of this Settlement Agreement." (Settlement Agreement at ¶¶ 4-5.)   The entire agreement clause provides:

> 6.   <u>Entire Agreement</u>.  This Settlement Agreement sets forth the entire understanding of the parties and their respective counsel with respect to the subject matter hereof and supercedes all existing agreements among them concerning such subject matter.

(Settlement Agreement at ¶ 6.)

Pacific Marine's Complaint is based on Paragraph 4 of the Second Amendment to the License Agreement.   Paragraph 4 of the Second Amendment added a provision to Paragraph 12 of the License Agreement which required Lockheed Martin to:

> remit to PACIFIC MARINE a payment of three percent (3%) of the Net Selling Price of "SLICE Ships" that are within the scope of a Patent Claim that are manufactured or sole by LOCKHEED MARTIN for commercial applications except for those "SLICE Ships" in whose manufacture or sale PACIFIC MARINE participates, until the total of such payments reaches $500,000 . . . . Such payments to PACIFIC MARINE shall be made within thirty (30) days of LOCKHEED MARTIN'S receipt of such Net Selling Price from LOCKHEED MARTIN'S customer.

(Second Amendment to License Agreement at ¶ 4.)

Under the License Agreement, Lockheed is relieved of its

5

responsibility or liability to make payments to Pacific Marine following the expiration or termination of the agreement, except as to liabilities accrued prior to expiration of the agreement. (License Agreement at ¶¶ 6.4 and 6.5.)

Pacific Marine contends that Lockheed has received payments totaling more than $20 million from the sale of Supply Boats, incorporating SLICE technology, and within the scope of the License Agreement.  (Compl. at ¶ 15.)  Lockheed admits that it has been paid an amount in excess of $20 million but, according to Jon P. Wing, Lockheed's Vice President for Business Management, the issue of whether the Supply Boats transaction constitute a "sale" and whether Lockheed is entitled to keep those funds is subject to a pending arbitration between Lockheed and Hoteleria y Servicios Petroleros, S.A. de C.V.  (Answer at ¶ 7; Declaration of Jon P. Wing attached to Lockheed's Separate Concise Statement of Facts in Opp. to Pacific Marine's Motion for Summary Judgment, Doc. 23, ("Lockheed CSF") at ¶ 4.)  Lockheed has not paid Pacific Marine any monies for the Supply Boats pursuant to the License Agreement.

Lockheed claims the Settlement Agreement terminated the License Agreement.  Pacific Marine points out that the Settlement Agreement, by its express terms, concerns a single SLICE prototype vessel that is a different vessel from the Supply Boats for which it seeks royalty payments pursuant to the License

Agreement.  Lockheed contends that the Settlement Agreement settled more than the title to the SLICE prototype vessel because while it incorporated several documents expressly, by the use of certain terms, it included the License Agreement and the termination of same.

Lockheed further contends that, regardless of whether the Settlement Agreement terminated the License Agreement, its performance was excused by the parties mutual abandonment of the License Agreement and by Pacific Marine's material breaches in failing to fulfill its obligations under the License Agreement.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will

7

have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  <u>Celotex</u>, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case.  <u>Id.</u>

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory.  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially

noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing party rest on conclusory statements.  <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

<u>**ANALYSIS**</u>

**A.**   <u>**Parties Cross-Motions for for Summary Judgment**</u>

      **1.**   *<u>Applicable law</u>*

            **a.**   *<u>The License Agreement Provides for the Application of California Law</u>*

California law applies to the interpretation and construction of the License Agreement.  (License Agreement at ¶ 11.3.)  Under California law, contract interpretation is a question of law for the Court.  See <u>Brawthen v. H&R Block, Inc.</u>, 104 Cal. Rptr. 486, 490 (Cal. 1972).  A contract is interpreted according to its written provisions, unless it is ambiguous.  <u>See</u> Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").  Only if a written agreement is uncertain or ambiguous will the Court consider extrinsic evidence.  See <u>Brawthen</u>, 104 Cal. Rptr. at 489.  Further, where a

9

contract is integrated, parol evidence is inadmissible to alter or enlarge its terms.  See Brawthen, 104 Cal. Rptr. at 490.

The License Agreement is unambiguous and integrated, and the Court will not consider extrinsic evidence as to the interpretation of the agreement's terms.

It also appears that California law would apply to Lockheed's defenses of mutual abandonment and prior breach.  The Court applies Hawaii's choice of law rules in determining what law governs the dispute.  See Patton v. Cox, 276 F.3d 493 (9th Cir. 2002).  Hawaii's choice of law rule is that when the parties choose the law of a particular state to govern their contractual relationship and that law has some nexus with the parties or the contract, the chosen law will generally be applied.  See Hawaiian Tel. Co. v. Microform Data Sys., Inc., 829 F.2d 919, 922 (9th Cir. 1987).  Hawaii law is the only other law that could apply.  The Court need not decide whether California or Hawaii law applies to Lockheed's affirmative defenses because California and Hawaii law do not significantly differ in this regard.

**b.   *The Settlement Agreement Provides for the Application of Maryland Law***

Maryland law applies to the interpretation of the Settlement Agreement.  (Settlement Agreement at ¶ 17.)   Maryland follows an "objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the

parties at the time of contract formation." <u>Myers v. Kayhoe</u>, 892
A.2d 520, 526 (Md. 2006).

> "A court construing an agreement under [the
> objective theory] must first determine from the
> language of the agreement itself what a reasonable
> person in the position of the parties would have
> meant at the time it was effectuated. In addition,
> when the language of the contract is plain and
> unambiguous there is no room for construction, and
> a court must presume that the parties meant what
> they expressed. In these circumstances, the true
> test of what is meant is not what the parties to
> the contract intended it to mean, but what a
> reasonable person in the position of the parties
> would have thought it meant."

<u>Myers</u>, 892 A.2d at 526 (citation omitted).

The Settlement Agreement is an enforceable contract and is
subject to the object theory of interpretation. <u>Maslow v.
Vanguri</u>, 896 A.2d at 419.   Determination of whether a contract
is ambiguous is a question of law, not fact. <u>Maslow</u>, 896 A.2d at
419.

Maryland courts construe the contract as a whole, looking to
the language of the contract itself as the primary source in
determining the parties' intention. <u>Maslow</u>, 896 A.2d at 419-20.
"[T]he clear and unambiguous language of an agreement will not
give way to what the parties thought the agreement meant or was
intended to mean." <u>Auction & Estate Representatives, Inc. v.
Ashton,</u> 731 A.2d 441, 444 (Md. 1999).   Contractual intent is
"determined in accordance with what a reasonable person in the
position of the parties at the time of the agreement would have

intended by the language used." <u>Maslow</u>, 896 A.2d at 420

(citation omitted).  Ambiguity is not based upon the parties'

mere disagreement as to the meaning of a term.  <u>See</u> <u>id.</u>  Instead,

"[a]n ambiguity arises when the language of the contract is

susceptible to more than one meaning to a reasonably prudent

person." <u>Ashton</u>, 731 A.2d at 444-45 (citations omitted).  "To

determine whether a contract is susceptible to more than one

meaning, the court considers 'the character of the contract, its

purpose, and the facts and circumstances of the parties at the

time of the execution." <u>Maslow</u>, 896 A.2d at 420 (citation

omitted).

**B.**   **<u>The Settlement Agreement Did Not Terminate the License</u>**
        **<u>Agreement</u>**

As Pacific Marine argues, the plain language of the

Settlement Agreement is limited to the SLICE Vessel identified

therein as Official No. 1048894.  The language from the first

paragraph of the Settlement Agreement and the release provisions

indicate that it is limited to the SLICE Vessel.  The documents

referenced in the Settlement Agreement, the 1994 Agreement, the

1998 Agreement, and the 2000 Letter, are all limited to the SLICE

Vessel.  The fact that the Settlement Agreement expressly lists

all other agreements, but not the License Agreement, also shows

that the Settlement Agreement does not include the License

Agreement.

The 1994 Purchase Agreement involved Pacific Marine's

12

potential purchase of the prototype SLICE Vessel.  The 1994
Purchase Agreement contained an integration provision indicating
that it contained Lockheed's entire understanding of the
Agreement.  (See Purchase Agreement at III.E.)

        The 1998 Purchase and Sale Agreement expressly addresses
the applicability of the License Agreement, but only in the
context of the SLICE Vessel.  (Purchase and Sale Agreement at ¶
6.)  The express language of the agreement indicates that it does
not apply to vessels other than the particular SLICE vessel
subject to the Purchase and Sale Agreement.  The Purchase and
Sale Agreement also contains an integration provision indicating
that it contains the entire understanding of Lockheed and its
counsel.  (Id. at ¶ 15.)

        Similarly, nothing in the 2000 Letter indicates that the
scope of the Settlement Agreement was to extend beyond the
purchase of the prototype SLICE vessel.  The 2000 Letter contains
no mention of the License Agreement or any suggestion that it
concerns the License Agreement.  The 2000 Letter did not
terminate the License Agreement.

        The Settlement Agreement also contains an "entire agreement"
clause stating that it sets forth the parties' entire
understanding with respect to the subject matter thereof.  There
is no language in the Settlement Agreement terminating the
License Agreement.  The License Agreement granted Pacific Marine
the right to use technology invented by Lockheed subject to

certain patents to enhance the performance of small water plane
area (SLICE) ships.  Pacific Marine's license was to "make, have
made, have used, sell, and have sold SLICE Ships and parts
thereof for commercial applications."  (License Agreement at ¶
3.1.)  The Settlement Agreement did not address these license
issues.  Lockheed's argument that the language "any *other*
*document* or understanding relating to the SLICE vessel from the
beginning of time to the date of this Settlement Agreement"
encompasses the License Agreement is unpersuasive.  (Settlement
Agreement at ¶¶ 4-5) (emphasis added).   Such language is still
limited to "the SLICE vessel" and the documents conerning the
particular SLICE Vessel in question.

Lockheed points out that Pacific Marine's affiliate, Navatek
Ltd., was made a party to the Settlement Agreement, but that
Navatek was not a party to the 1994 Purchase Agreement, the 1998
Purchase and Sale Agreement or to the 2000 Letter.  Lockheed
reasons that the only agreement to which Navatek could have been
a party was the License Agreement, thereby suggesting that the
Court should interpret the Settlement Agreement to include the
License Agreement.  (Lockheed Reply at 11.)  Given that Navatek
did not sign the License Agreement or any of its amendments, the
argument does not hold together.  Nor is there any evidence that
Navatek was a party to a subcontract or sublicense under the
License Agreement.  The Court finds Lockheed's speculative
argument unpersuasive, particularly in light of the plain

language of the Settlement Agreement and the agreements referenced therein.

For these reasons, the Court finds that the Settlement Agreement settled the parties' dispute with respect to the purchase and sale of the one prototype SLICE vessel it references.  By its plain language, the Settlement Agreement does not apply to the License Agreement and the Settlement Agreement did not terminate Lockheed's obligations under the License Agreement.  Accordingly, Lockheed's motion for summary judgment is DENIED and Pacific Marine's motion for summary judgment is GRANTED IN PART as to Lockheed's claim that the Settlement Agreement terminated its obligations under the License Agreement.

B.  **There Are Genuine Issues of Material Fact as to Whether the Parties' Mutually Abandoned the License Agreement or Pacific Marine Materially Breached the License Agreement Thereby Excusing Any Subsequent Breach By Lockheed**

Lockheed contends that, even if the Settlement Agreement did not terminate the License Agreement, it is not liable to Pacific Marine under the License Agreement because, by their conduct, the parties mutually abandoned the License Agreement and relinquished all of their respective rights thereunder.  Lockheed points to Pacific Marine's alleged failure to fulfill certain obligations under the License Agreement as evidence of the parties' intent to abandon the License Agreement.  In particular, Lockheed contends that Pacific Marine failed to: (1) submit quarterly statements

15

regarding SLICE ships sales; (2) render an annual Market Activity Report to Lockheed; and (3) manufacture and offer for sale SLICE ships as required by the License Agreement.   Lockheed has raised genuine issues of material fact as to whether the parties abandoned the License Agreement.

### 1.   *Contractual Abandonment*

Generally, "[a] contract is abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquieces." Kuroda v. Kuroda, 958 P.2d 541, 549 (Haw. App. 1998).   "Abandonment need not be expressed; it may be inferred from the conduct of the parties and the attendant circumstances." Anderson v. Oceanic Properties, Inc., 650 P.2d 612, 618 (Haw. App. 1982).   Yet, "[t]o have an implied abandonment the acts and conduct relied on must be positive, unequivocal, and inconsistent with the contract." Pennel v. Pond Union School Dist., 105 Cal. Rptr. 817 (Cal.App. 1973).   "The abandonment of a contract discharges its obligations." Dring v. Dring, 956 P.2d 1301, 1308 (Haw. App. 1998).

### 2.   *Lockheed Did Not Waive Its Mutual Abandonment Defense*

Pacific Marine first contends that Lockheed waived its affirmative defense of mutual abandonment by not listing it in its answer.   Lockheed did not specifically list abandonment among its affirmative defenses, but it incorporated the defenses set forth in Fed. R. Civ. P. 8(c).   While abandonment is an

16

affirmative defense subject to waiver it is within the Court's discretion to determine whether Lockheed waived it.  See Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984) (failure to raise the defense of the statute of limitations in initial pleading did not preclude summary judgment motion based on that defense where there was no prejudice to the opposing party).

In this case, the facts suggest that Pacific Marine was on notice of the abandonment defense.  Moreover, Lockheed has given Pacific Marine notice of the defense by raising it in its opposition, such that Pacific Marine has had time to respond and adjust its case strategy, particularly at this early stage.  See Northwest Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir. 1988) (giving party until a pretrial order to raise an affirmative defense because a pretrial order has the effect of amending the pleadings and controls the subsequent course of action in the litigation).   Under the facts here, the Court finds that Lockheed did not waive its abandonment defense.

**3.    *There Are Genuine Issues of Material Fact as to Whether Pacific Marine Abandoned the License Agreement***

In response to Lockheed's argument that Pacific Marine's actions constituted abandonment of the License Agreement, Pacific Marine contends that: (1) it was under no obligation to manufacture and offer SLICE Ships because the License Agreement did not contain minimum construction requirements; (2) Lockheed waived the requirement to provide periodic reports because the

17

parties' course of conduct shows that they never complied, or expected compliance with, those provisions; and (3) Lockheed failed to terminate the License Agreement, thereby depriving Pacific Marine of its contractual right to cure.

Pacific Marine has not made a sufficient showing that the License Agreement remained in effect so as to be entitled to summary judgment on Lockheed's abandonment defense.  There are disputed issues of material fact as to whether the parties abandoned the License Agreement by their conduct.  Lockheed, for instance, has presented evidence that Pacific Marine did not submit quarterly written statements or an annual detailed market activity report, but Pacific Marine contends that it was under no obligation to do so because the parties waived such requirements by their course of conduct.  To date, the parties have not conducted discovery.  Although Pacific Marine presents evidence that it has continued to work with Lockheed since the Settlement Agreement, it has not pointed to any specific evidence which shows that the parties continued to operate pursuant to the terms of the License Agreement.  (See Pacific CSCF in Opp. at 13, 14.).  Similarly, the parties' past performance under the License Agreement does not necessarily show an intent to continue performance under the agreement, despite Pacific Marine's alleged failure to comply with its terms.  (Pacific Reply at 13 "With the help provided by Pacific Marine, Lockheed was awarded a patent for SLICE technology during early 1997".)  As Lockheed points

18

out, crediting Pacific Marine's positions, gives rise to material issues of fact. (Lockheed Opp. at 11.) Based on the current record before it, the Court cannot conclude that the parties' actions showed a positive and unequivocal abandonment of the License Agreement.

### 4. *There Are Genuine Issues of Material Fact as to Whether Pacific Marine Breached the License Agreement*

Lockheed also argues that Pacific Marine's alleged failures in complying with the provisions of the License Agreement constituted a prior material breach of the License Agreement, thereby excusing any alleged subsequent material breach by Lockheed. Generally, "[a] party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations." Pry Corp. of America v. Leach, 2 Cal. Rptr. 425, 429 (Cal. Dist. Ct. App. 1960). As some of the obligations Pacific Marine allegedly failed to fulfill were central to the License Agreement, Lockheed has raised genuine issues of material fact as to whether Pacific Marine materially breached the License Agreement. If Pacific Marine materially breached the License Agreement, Lockheed argues that it is excused from performing its obligations under the License Agreement, including the payment of royalties to Pacific Marine that is the subject of this lawsuit. Because there are material issues of fact as to whether the Pacific Marine did, in fact, materially breach the License Agreement, the Court does not, at

19

this juncture, decide the legal issue of whether any material breach by Pacific Marine would excuse Lockheed's performance even if Lockheed did not terminate the License Agreement in accordance with Section 6.2 or 6.3 by providing Pacific Marine sixty days written notice of its alleged material breach and an opportunity to cure.

## CONCLUSION

For the foregoing reasons,

(1)  Defendant Lockheed Martin Corporation's Motion for Summary Judgment (Doc. 15) is **DENIED**.

(2)  Plaintiff Pacific Marine & Supply Company, Ltd.'s Motion for Summary Judgment (Doc. 17) is **GRANTED IN PART AND DENIED IN PART.**

(3)  The Court finds that the Settlement Agreement did not terminate the License Agreement.

(4)  The Court finds that Lockheed has not waived its affirmative defense of mutual abandonment.

(5)  The Court finds that genuine issues of material fact remain with respect to whether the parties mutually abandoned the License Agreement and as to whether Pacific Marine committed any material breach of the License Agreement.

    (6)    The parties are directed to proceed with the status
              conference set before Magistrate Judge Kurren on July
              16, 2008 at 9:00 a.m.

IT IS SO ORDERED.

DATED: June 27, 2008, Honolulu, Hawaii.



                          **/s/ Helen Gillmor**

                      Chief United States District Judge

---

Pacific Marine & Supply Company, Ltd. v. Lockheed Martin Corporation; Civ. No. 08-00022 HG-BMK; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF PACIFIC MARINE & SUPPLY COMPANY, LTD.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION FOR SUMMARY JUDGMENT**